UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                      |   |                                  |
|--------------------------------------|---|----------------------------------|
| MELANIE PHILBROOK,                   | ) |                                  |
|                                      | ) |                                  |
| Plaintiff,                           | ) |                                  |
|                                      | ) |                                  |
| v.                                   | ) | Civil Action No. 1:14-cv-10766-LTS |
|                                      | ) |                                  |
| CAROLYN W. COLVIN,                   | ) |                                  |
| Acting Commissioner,                 | ) |                                  |
| Social Security Administration,      | ) |                                  |
|                                      | ) |                                  |
| Defendant.                           | ) |                                  |

ORDER ON MOTIONS TO AFFIRM AND REVERSE SOCIAL SECURITY DECISION

May 19, 2015

SOROKIN, J.

An Administrative Law Judge ("ALJ") found Plaintiff Melanie Philbrook ("Philbrook") not disabled, although he found her unable to perform her prior work. The Appeals Council declined to review this decision despite receiving opinion letters from three of Philbrook's doctors which the doctors wrote after the ALJ decision. As a result, Social Security did not award Philbrook disability benefits, a decision she has appealed to this Court. Philbrook advances four objections to Social Security's decision, each of which are addressed below. Because the ALJ's decision and the parties' respective memoranda each carefully and thoroughly summarize both the undisputed medical evidence as well as the testimony presented at the ALJ's hearing, the Court will describe only those facts necessary for resolution of the Plaintiff's specific objections and otherwise assume familiarity with the record which the Court has reviewed.

1

I.       The Credibility Evaluation

Philbrook asserts the ALJ erred under Avery when he rejected some of Philbrook's testimony regarding the "location, duration, frequency, and intensity" of her pain and other symptoms, Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986), in two respects: first by relying on "a few isolated symptom-free instances" and second by failing to explain in a meaningful way his credibility determination.  Doc. No. 21-1 at 14.  Plaintiff is incorrect; substantial evidence supports the ALJ's credibility determination.  See 42 U.S.C. § 405(g) (2012); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

In making his credibility determination, the ALJ comprehensively reviewed both Philbrook's subjective reports, A.R. at 16-17, and the medical records spanning back to 2004, A.R. at 18-29.  Thereafter, the ALJ explained his reasons in detail, A.R. at 29-31, for concluding that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity."  A.R. at 29.  The explanation addressed each of the Avery factors.  See, e.g., A.R. at 17, 30 (daily activities); A.R. at 16-17, 29, 30 (the location, duration, frequency, and intensity of Philbrook's pain); A.R. at 16-17, 30-31 (precipitating and aggravating factors); A.R. at 17-18, 30 (type, effectiveness and side effects of medication to alleviate pain); A.R. at 30 (treatment other than medication for pain); A.R. at 17 (any activities or measures Philbrook used to relieve her pain); A.R. at 30 (other factors concerning functional limitations and restrictions due to pain).

Contrary to counsel's sweeping assertion that the ALJ provided no explanation, Doc. No. 21-1 at 14, the ALJ described in detail each category of Philbrook's symptoms and testimony,

the extent to which he credited her reports and the basis, with citation and discussion of specific medical evidence, to support his determinations. A.R. at 29-31.

The ALJ did cite to various instances of daily activities such as that Philbrook performed personal care tasks, light household chores, and simple cooking, among others. A.R. at 30. But, this is not the case in which the ALJ "refers to a few isolated symptom-free instances in an effort to show that Ms. Philbrook's activities of daily living do not support her allegations of disability," as Philbrook argues. Doc. No. 21-1 at 14. Rather, the ALJ cited these activities to outline the type and nature of activities Philbrook did perform frequently notwithstanding her impairments. The ALJ also stated that, in placing "great weight [on] the state agency physical assessments for the non-exertional limitations," he considered "the claimant's physical therapy and pain management records, and her psychiatric treatment notes showing moderate symptoms and limitations through at least May 2012." A.R. 31. In short, the ALJ complied with the requirements of Avery and substantial evidence supports the ALJ's determinations.

II.     The ALJ's RFC Determination

Insofar as Philbrook makes a challenge to the RFC determination separate from her objection to the evaluation of the extent of her condition discussed above, she complains that the "ALJ's [RFC] assessment appears as a conclusion. . . . There is no reasoning and citation of specific facts." Doc. No. 21-1 at 15. This is simply incorrect. The ALJ rendered a detailed and lengthy explanation of the basis for his RFC determination, A.R. at 16-31, in which he made a calibrated decision. See, e.g., A.R. at 31 (rejecting in part state agency assessments and imposing additional RFC restrictions).

III. <u>Jobs in the Regional Economy</u>

Based on his RFC and the testimony of a vocational expert, the ALJ determined that there were jobs in the national or regional economy which Plaintiff could perform. A.R. at 33. Philbrook objects that the ALJ failed to explain the basis for concluding that 46,000 jobs in the national economy constituted a significant number of jobs nor did the ALJ consider Philbrook's limited ability to drive. Doc. No. 21-1 at 17. Substantial evidence supports the ALJ's determinations. The VE's testimony, noted by the ALJ, of the number of available positions in both Massachusetts and the nation constitute substantial evidence for his determination. Here, the ALJ found 670 available positions in Massachusetts, A.R. 32-33, which is a significant number. <u>Custodio v. Astrue</u>, No. 07-11876-MLW, 2010 WL 3860591, at *5 (D. Mass. Sept. 27, 2010). Philbrook argues that ALJ did not consider her limited ability to drive in determining that 670 available positions is a significant number. Doc. No. 21-1 at 17. While driving limitations arising from a disability are relevant, <u>Lopez Diaz v. Sec'y of Health, Educ. & Welfare</u>, 585 F.2d 1137, 1140 (1st Cir. 1978), the ALJ considered testimony and medical records that indicated that Philbrook had the ability to drive herself to the store and to doctor appointments, even when she was on medication. Thus, the ALJ's finding that Philbrook could drive to work was implicit. <u>Id.</u> (finding evidence to support the ALJ's "implicit finding" that the plaintiff could drive to work).

IV. <u>The Appeals Council</u>

Finally, Philbrook objects to the Appeals Council's refusal to review Philbrook's case in the face of three opinion letters submitted to it, but not to the ALJ. Philbrook's surgeon, Dr. Coumans, wrote that Philbrook's recovery from the cervical surgery performed in November, 2011, "has maximized" as of December 21, 2012. A.R. at 5. He further noted that she suffers from ongoing myelopathy causing her "bilateral weakness, clumsiness, difficulty with

coordinated movement" and "radiating pain."  According to Dr. Coumans, Philbrook's symptoms "are likely to continue and be permanent."  Id.  Philbrook's mental health providers wrote a summary letter stating her diagnosis (Major Depressive Disorder, Anxiety Disorder with a history of Post-Traumatic Stress Disorder), and her current GAF of 45.  A.R. at 6.  They also stated that Philbrook "endorsed most symptoms of major depression for most of the day, every day."  Id.  Finally, Philbrook's nurse practitioner wrote a letter summarizing, briefly, Philbrook's neurologic medical history in which she stated Philbrook has "been unable to work because of these problems which is also document [sic] in your medical records" and that Philbrook's "prognosis remains uncertain."

The Appeals Council reviewed the three letters, A.R. at 2, after which it "found this information does not show a reasonable probability that [it], either alone or when considered with the other evidence of record[,] would change the outcome of the decision."  Id.  The Court reviews this decision only for "an explicit mistake of law or other egregious error."  Anderson v. Astrue, 682 F. Supp. 2d. 89, 97 (D. Mass. 2010) (citing Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)).  The Appeals Council applied the correct legal standard.  See 20 C.F.R. § 405.401(c) (2014).  Neither the nurse practitioner nor the mental health providers offered materially new information; they largely summarized information that was already before the ALJ and considered by him.  See A.R. at 22-25, 527, 649-50, 667, 741, 743, 749, 751, 763, 767, 799, 882.

That leaves two things to consider: Philbrook's mental health providers' opinion that her condition "grossly interfere[s]" with her ability to do any type of work and Dr. Coumans' opinion that Philbrook's recovery has "maximized."  Neither of these opinions provide grounds to find that the Appeals Council made an egregious error or mistake of law when it declined to review Philbrook's case.

5

First, the mental health providers' opinion constitutes a conclusion of law that is solely reserved for the ALJ. Administrative law judges must "consider findings and other opinions" of doctors "except for the ultimate determination about whether [a claimant is] disabled," which is reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(2)(1) (2014); Carr v. Astrue, No. 09-10502-NG, 2010 WL 3985189, at *8 (D. Mass. 2010). "No special weight attaches to opinions concerning the dispositive legal question of the claimant's ability to work." Carr, 2010 WL 3985189, at *8 (citing 20 C.F.R. § 404.1527(e)(1)-(3) (2014)). Philbrook's mental health doctors' opinion that her disability "grossly interferes with her ability to do any type of work" is a conclusion of law instead of medical opinions about Philbrook's condition and its effects. Thus, the Appeals Council did not err in finding that this opinion would not have changed the outcome of the decision.

As to Dr. Coumans' opinion, he states that "[i]t has now been over 1 year since the surgery and her recovery has maximized." A.R. at 5. Although this opinion was not contained within the record, the Appeals Council did not commit an egregious error when it concluded that this information would not have changed the outcome of the ALJ's decision. The ALJ noted that the "medical record supports that she will have improvement in both her physical and psychological symptoms and functioning" if she continues with therapy. A.R. at 31. However, the ALJ cited extensively to Philbrook's doctors' reports and daily activities to support his determination of her RFC which detailed her condition and complaints of pain at that time rather than his own conjecture of her possible improvements. A.R. at 30. The letter from Dr. Coumans does not suggest that Philbrook's condition materially worsened between the time of the hearing

before the ALJ and the date of the letter. Thus, the Appeals Council did not err in denying review based on these letters.[1]

For the foregoing reasons, Defendant's motion to affirm the Commissioner's decision is GRANTED, and Plaintiff's motion to reverse is DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[1] The letters indicate that Philbrook continued to see her doctors between the last medical record (dated May 4, 2012), and Philbrook's hearing before the ALJ. Additionally, Philbrook's testimony during the hearing indicates that she received an MRI in July, 2012, evidence of which is not included in the record. A.R. at 53. Although the ALJ has an obligation to develop the record "that is not wholly inadequate under the circumstances," it was Philbrook's burden to "furnish the requisite medical and other evidence within [her] grasp." Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975); see 42 U.S.C. § 423(d)(5) (2012).